The Wabash, St. Louis and Pacific Railway Company

*v.*

Annie M. Peyton.

*Filed at Ottawa May 10, 1883.*

1. Appeal—*reviewing facts.* The assessment of damages in an action on the case, for a personal injury, is a question of fact, depending on the evidence, and hence this court is prohibited from inquiring whether the damages assessed in such a case are excessive.

2. Railway company—*can not exonerate itself from its duty by contract.* A railway company, by accepting and acting under its charter, becomes a carrier of persons and property, and the law imposes all the duties and liabilities of a common carrier on it, and such company can not exonerate itself from such duty and responsibility by contract with others, nor in anywise escape or free itself from liability, unless released by the General Assembly.

3. Same—*when liable for negligent acts of servant of another road.* Where one railway company acquires the right to run its trains over a portion of the road of another company by a contract, in which it is agreed its trains, while on such leased road, shall be under the control and direction of the yard-master or other servant of the lessor company, the yard-master of the latter road, at such place and for the time being, will be the servant of the lessee company, and it will become liable for an injury caused to another from the negligent acts of such yard-master, the same as if he was its own employé on its own road.

4. Same—*held to same care on leased road as on its own.* A railroad company is held to the exercise of due care for the safety of all persons while exercising its franchises, whether on its own road or on that of another company. This duty was imposed by law when it received its franchises, which holds good at all times and in all places, and if the company operates its trains over the road of another by contract or lease, it must see and know that the track is in a good and safe condition, not only for the safety of its passengers, but also for the safety of persons rightfully near to the track and liable to injury by its being used when in an unsafe condition.

5. Where a railroad company procures, by contract with another such company, the right of running its trains into and out of a depot over the track of the latter, it thereby makes that portion of the track so used its own, in so far that it will be responsible for all injuries resulting from negligence in keeping or permitting it to be in an unsafe condition.

6. In this case the defendant railway company, under an agreement with another company, had the privilege of entering and departing from the depot

at a station over the track of the latter, by yielding to the latter the control of its passenger trains over that portion of the track. Under this contract the switch engine of the lessor made up the defendant's trains, and generally drew them out, but when the defendant performed that service it was under the direction of the lessor's yard-master. On the day of the accident defendant's engine backed in and was attached to the baggage car, and while detained to receive baggage some one threw a lot of loose boards on the track, between the baggage car and the coaches. After receiving the baggage the engine backed in and was attached to the passenger cars, and the train moved out. In removing the boards the yard-master and his assistants left one board projecting so near the rail of the track on the left side of the engine, that it was struck by the end of the bar of the pilot, and being held down by the other boards lying on it, this board was forced around against a high board fence and driven through it, when it struck the plaintiff, who was near the fence and not seen by the engineer, and she was injured by the dislocation of her ankle, and the breaking of her leg above the ankle: *Held,* that the defendant was liable for the injury thus caused.

7. In such case the court declined to say whether the lessor company was also liable, but held that if it was, the plaintiff had the option to sue either company alone, and perhaps both, as *tort feasors,* but that she was not required by any rule to sue either one instead of the other, or to sue both jointly.

Appeal from the Appellate Court for the First District; —heard in that court on appeal from the Circuit Court of Cook county; the Hon. Thomas A. Moran, Judge, presiding.

Messrs. Sleeper & Whiton, for the appellant:

Negligence is not actionable unless it is the proximate cause of the injury complained of. The law can not undertake to trace back the chain of causes indefinitely. No one is guilty of culpable negligence by reason of failing to take precautions which no other man would likely take under the circumstances. (Shearman and Redfield on Negligence, secs. 6, 9, 10.) And whether a given state of facts constitutes negligence, is a question of law, though whether a particular act of negligence contributed to the injury is a question of fact. Ibid. sec. 11; *Railroad Co.* v. *Armstrong,* 52 Pa. St. 282; *Tarwater* v. *Railroad Co.* 42 Mo. 193; *Gee* v. *Railroad*

*Co.* L. R. 8 Q. B. 161; *Beisiegle* v. *Railroad Co.* 40 N. Y. 9; *Glassey* v. *Railroad Co.* 57 Pa. St. 172.

For analogous cases where the damages have been held too remote to justify a recovery for acts of negligence: *Sharp* v. *Powell,* L. R. 7 C. P. 253; *Morrison* v. *Davis,* 20 Pa. St. 171; *Railroad Co.* v. *Cole,* 41 Ind. 331; *Phillips* v. *Dickerson,* 85 Ill. 11; *Fent* v. *Toledo, Peoria and Warsaw R. R. Co.* 59 id. 349; *Toledo, Wabash and Western R. R. Co.* v. *Muthersbaugh,* 71 id. 572; *Illinois Central R. R. Co.* v. *Phillips,* 55 id. 194; *Brown* v. *Kendall,* 6 Cush. 292; *Mott* v. *Railroad Co.* 1 Rob. 585; *Hoag* v. *Railroad Co.* 85 Pa. St. 293; *Hartfield* v. *Roper,* 21 Wend. 615; *Bizzle* v. *Booker,* 16 Ark. 308; *Cornman* v. *Railroad Co.* 4 Hurl. & N. 781.

But if there was actionable negligence it was that of Riddell, the depot-master of the Western Indiana company, alone, for which he and his superior are liable. It is true Shadel was on our engine when the injury happened, but, *pro hac vice,* whose servant was he? The rule of *respondeat superior* does not apply if the alleged employer has no right to control the acts of his alleged servant. *Laugher* v. *Pointer,* 5 B. & C. 550; *Blake* v. *Ferris,* 5 N. Y. 48; *Stevens* v. *Armstrong,* 6 id. 435; *Buffalo* v. *Holloway,* 7 id. 493; *McCafferty* v. *Railroad Co.* 61 id. 178; *Murphy* v. *Caroli,* 3 Hurl. & Colt. 462; *Fletcher* v. *Railroad Co.* 1 Allen, 9; *Speed* v. *A. and P. R. R. Co.* 71 Mo. 303; *Railroad Co.* v. *Carroll,* 6 Heisk. 347; *Pfau* v. *Williamson,* 63 Ill. 16; *Gray* v. *The "John Frazer,"* 21 How. 193; *Ohio and Mississippi R. R. Co.* v. *Davis,* 23 Ind. 553; *Felt* v. *Dean,* 22 Vt. 170; *Ladd* v. *Chotard,* 1 Ala. 366.

Mr. Frank Baker, for the appellee:

This is not the case of an injury resulting from the negligence of an independent contractor in some casual act, but a case of failure to perform a duty imposed by law, whether operating on its own or another's road. Where the thing the contractor does is one which it is the duty of the employé to

do, either personally or through an agent, the employé is liable for the contractor's negligence. Wharton on Negligence, sec. 185.

One bound to perform a duty can not relieve himself from liability for its non-performance by a contract he may make for its performance by another. Shearman and Redfield on Negligence, sec. 15; Story on Agency, sec. 453; *Webb* v. *P. and K. R. R. Co.* 57 Maine, 128.

For failure to fence, both lessor and lessee companies are liable. *East St. Louis R. R. Co.* v. *Gerber*, 82 Ill. 632.

Riddell, the yard-master of the Western Indiana company, was *pro hac vice*, as to the public, the servant of appellant; and appellant is liable for his negligence. Shearman and Redfield on Negligence, sec. 73; *Oil City R. R. Co.* v. *Kleighorn*, 74 Pa. St. 316; *Vary* v. *B. C. R. and M. R. R. Co.* 42 Iowa, 246; *Laugher* v. *Pointer*, 5 B. & C. 559.

If this were not so, still the defendant is liable for any negligence of its servants contributing to the injury. Pierce on Railroads, 282; *Webster* v. *H. R. R. Co.* 38 N. Y. 260.

The damages in this case are not excessive, or such as to warrant a reversal, within the following cases: *West Division R. R. Co.* v. *Hughes*, 69 Ill. 178; *Northern Line Packet Co.* v. *Bininger*, 70 id. 572; *Chicago* v. *Elzeman*, 71 id. 132; *Illinois Central R. R. Co.* v. *Ebert*, 74 id. 399; *Pennsylvania Co.* v. *Rudel*, 100 id. 603.

Mr. Justice Walker delivered the opinion of the Court:

It appears that appellant's cars, by a lease or an agreement with the Chicago and Western Indiana Railroad Company, were permitted to run over a portion of the road of the Chicago and Western Indiana Railroad Company, at a station to which several railroad companies ran, and from which their trains departed. By this agreement the Chicago and Western Indiana Railroad Company retained the control of appellant's passenger trains over that portion of its track.

By it the servants of the lessor directed and controlled appellant's servants and trains in coming in and going from the depot. The switch engine of the lessor, under the control of its employés, made up appellant's trains, and its engines drew them out. When appellant was permitted to perform that service it was under the direction of lessor's yard-master,—this being the legal relation of the two companies by the terms of the lease or agreement entered into by them. A train of appellant, on the 10th day of September, 1881, left the depot, when the injury was received by appellee. The train which produced the injury, was, by direction of the yard-master, placed in position for its departure, appellant's engine backed in and was attached to the baggage car, and whilst detained to receive the baggage some one threw some loose boards on the track, between the baggage car and the coaches. After receiving the baggage the engine backed, and was attached to the passenger cars, and the train moved out. In removing the boards, the yard-master and those assisting him left one board projecting so near the rail of the track on the left hand side of the engine, that it was struck by the end of the bar of the pilot, and being held down by the boards lying upon it, this board was forced around against a high board fence, and was driven through the fence, and it struck appellee, who was near the fence, and not seen by the engineer, and she was injured by the board striking her and dislocating her ankle, and her leg was broken just above the ankle. She brought suit in the circuit court of Cook county, and recovered a judgment against the company for $2500. The company appealed to the Appellate Court for the First District, where the judgment was affirmed, and the case is brought to this court.

Appellant insists that the injury was the result of accident, and not of negligence. The jury, and the Appellate Court, have found against this position. Whether it was caused by accident or negligence was a controverted fact, which we have

been positively prohibited by statute from reviewing in this court in this class of cases. This has been so often repeated that it would seem to be an act of supererogation to repeat it here.

It is next insisted that the action, if any can be maintained, is against the Chicago and Western Indiana Railroad Company, and not against appellant. We shall consider this point with the fourth of appellant's points.

It is likewise insisted that the damages are excessive. Appellant refers to no text-book or reported case which holds that the assessment of damages is a question of law. On the other hand, by every rule of law it must be considered a question of fact. It is averred as a fact in the declaration. It is traversed as a fact, and never questioned by demurrer. On the trial damages are proved by evidence, and they are found by the jury, and not by the court. The proposition seems so obvious that it should not require the decision of a court to establish the proposition. Before the statute of our legislature conferred the power on this court to review the facts in cases brought here for decision, the courts, neither in England nor this country, ever exercised the jurisdiction to examine and assess the damages, or to balance the evidence, to ascertain whether they were correctly assessed. In this class of cases, where the action sounds in damages, the courts rarely ever interfered with their assessment. That is within the province of. the jury. It was in cases only where it was manifest the jury had acted under the influence of passion, prejudice, or some other improper motive, that the court would interfere to disturb the finding of damages. The rules by which damages, in many cases, shall be measured, are questions of law, and in such cases the court, when asked, is bound to instruct the jury as to the rule for their measurement, but it is the province of the jury to apply the rule and fix the amount. If the trial court were, in such cases, to instruct the jury as to the sum they should find as

damages, it is not believed that any one in the profession could be found to contend that the instruction was correct; and by what statute or rule of practice can we examine the evidence and determine whether the damages are excessive? That power was taken from this court when we were deprived of the power to consider controverted facts.

We now come to the consideration of the important and controlling question of the case, and that is, whether appellant is freed from liability by placing, by the lease or agreement, its employés and trains, at the place where the injury occurred, under the control of the road-master of the other road. Appellant did so as a matter of interest or choice, and not from overpowering necessity. When the charter was granted the corporation became a carrier of persons and property, and the law imposed the duty of common carrier, with all the liabilities incident to the occupation, and the responsibility was assumed by the corporation, and imposed on it by the law. Nor can the corporation exonerate itself from the duty and responsibility by contract with others, nor in anywise escape or free itself from the liability, unless released by the General Assembly. Appellant voluntarily placed its engine and cars, at that place, under the control and direction of the employés of the other road, and for the time being, and for that purpose, the road-master of the other road became the servant of appellant. The engine and train belonged to appellant; the engine-driver, the fireman, the conductor and brakeman on board of the train were its servants, under its control, and the yard-master, under the agreement, *pro hac vice*, for the time and place, was its servant. Had the agreement not been made he would not have controlled the starting of the train. Appellant, by the agreement, authorized him to act as its yard-master, and to act for it at that time and place, and it must be held responsible for his acts. The company can not escape by saying he was employed and controlled by the other road. He was, as we

have seen, the servant of appellant, to the full extent he acted, in this case.

Again, this company was held to care for the safety of all persons whilst exercising its franchises, whether on its road or the road of another. This was the duty imposed by law when it received its franchises, and the duty inheres whenever and wherever the company exercises them. This is a duty that attaches at all times, and at all places where the company operates its road. It was, then, the duty of appellant, by its servants, to see and know that the track was in a good and safe condition,—not only to the passengers, but to those rightfully near to and liable to be injured by its being operated when in an unsafe condition. By slight attention this danger could have been seen and avoided. Appellant, by the contract, for the purpose of running into and out of the depot, made this portion of the track its own, and must be responsible for all injuries resulting from negligence in keeping or permitting it to be in an unsafe condition. Had this part of the road being used by appellant in fact belonged to it, and been operated by its servants, no one, we apprehend, would claim appellant would not be liable. Then, when it acquired the right to so use the road, and its use to be controlled by the road-master, and obstructed by him, or those under him, appellant must be equally liable. By the contract appellant yielded, instead of retaining, the necessary control to secure the safety of other persons. Moreover, the servants of appellant in charge of the engine were not prohibited from seeing and removing the obstruction, and it was their duty to have seen and removed it.

The law thus rendering appellant liable, it becomes a fruitless question, in this case, to inquire whether the Chicago and Western Indiana Railroad Company was liable. If it was, then appellee had her option to sue either alone, and, it may be, both, as *tort feasors*. But she was not required, by any rule of which we are aware, to sue either one instead of the

other, or to sue both jointly.   The court below instructed in accordance with the views we have expressed, and refused to instruct in accordance with the views contended for by counsel for appellant, and the giving and refusing of the instructions was not erroneous.

On the entire record we perceive no error, and the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*